[Civ. No. 8798. First Appellate District, Division Two.—December 29, 1932.]

RAY L. RILEY, as State Controller, Petitioner, v. EDWARD M. STACK, as County Auditor, etc., et al., Respondents.

U. S. Webb, Attorney-General, and Charles A. Wetmore, Jr., Deputy Attorney-General, for Petitioner.

Edmund Scott, District Attorney, for Respondents.

NOURSE, P. J.—This is an original proceeding in *mandamus* to require the respondents to comply with the provisions of the "Narcotic Rehabilitation Act" (Stats. 1927, p. 149; Deering's Gen. Laws, Act No. 5320).

The facts are without dispute. A "patient" within the meaning of the act was duly and regularly committed to the state narcotic hospital by order of the Superior Court sitting in the City and County of San Francisco. In that proceeding the "patient" was found to be a resident of the county of San Mateo and the court thereupon entered its order that San Mateo County make payments to the state of California for the support of the inmate of the state hospital pursuant to the act. The respondents defend upon the sole ground that San Mateo County was not a party to the proceeding leading to the commitment and had no opportunity to contest the issue of the residence of the inmate.

Section 3 of the act authorizes the arrest and the trial and commitment before "a judge of the superior court" of "any person" found to be a drug addict. Section 4 provides that, "at the hearing", the court must inquire into the financial condition of the person committed, and that the court may order the payment of such sums as it may deem just to "the county, or city and county, of which such person is a *bona fide* resident" during such time as the person committed may remain in the state hospital. Section 11 provides that for each person committed "the county of which he is a *bona fide* resident shall pay the state at the rate of twenty-five dollars per month for the time such person so committed remains an inmate of the institution". Section 12 imposes the duty upon the county auditor to include the amount due under this act in his state settlement report, and requires the county treasurer to pay such amount to the state treasurer.

The respondents admit that they have not performed these duties. They also admit the allegations of the petition that the inmate was duly and regularly committed to the state institution, and that the superior court, in the commitment proceeding, found that the inmate was a *bona fide* resident of San Mateo County.

But respondents argue that the due process of law clauses of the federal and state Constitutions require that the county, or its taxpayers, should be heard before an obligation to pay is placed upon them. This constitutional guaranty is that no *person* shall be deprived of his property without due process of law. The word "person" has been extended to include private corporations, and, in a limited field, has been extended to public corporations. A county in this state does not come under either class. It is merely a political subdivision of the state over which the legislature has the inherent right to prescribe the powers, duties and obligations for the purpose of exercising, on behalf of the state, the governmental functions of such subdivision. The Narcotic Rehabilitation Act is an exercise of the state's police power designed to care for the narcotic addicts within the state and wherever found. The provision requiring each county to pay a prorated cost of the maintenance of those persons committed who are *bona fide* residents of the county is a reasonable provision not unlike those found in the acts relating to the care of the insane, the feeble-minded, the orphans, the juvenile delinquents and in similar acts. As we said in *Jensen* v. *McCullough,* 94 Cal. App. 382, 394 [271 Pac. 568, 574]: "The legislature has the power to determine that each political subdivision should maintain a home for the care of its feeble-minded, or it could provide a state home, or homes, for the purpose and bear all the burden of maintenance, or it could require each political subdivision to contribute a share of the expense of the maintenance of the individual. In the case at hand the legislature has provided a home where such patients may be kept and has fixed a uniform charge upon every county in the state determined by the number of patients committed from each county."

In this exercise of its police power the legislature has passed an uniform act applicable to all counties in the state and requiring payments upon an uniform basis fixed by the number of inmates received. For the purpose of fixing these charges it has committed to the superior court the duty of determining the issue of residence of the person committed. For this purpose the proceeding is not a contest between two counties to determine which should bear the burden. It is an *ex parte* proceeding in which the state and the patient alone are interested. The superior court does

not sit as a county court, but it is a court of the state to which the state has delegated the duty of determining the issues before it. When that determination has been made it becomes final unless set aside by some proceeding authorized by law. But, until set aside, it may not be subjected to collateral attack by a ministerial officer. ▉ Though the respondents are technically county officers, they are, in this instance, agents of the state designated by the state to perform certain functions in the administration of this statewide act. They do not represent the county or the taxpayers of the county.

But, as agents of the state for this purpose, they cannot be said to be strangers to the proceeding in the San Francisco court. As to them the judgment and order in that proceeding must be deemed conclusive "in respect to the personal, political, or legal condition or relation" of the status of the addict within the meaning of section 1908 of the Code of Civil Procedure. This is so because the status of the addict —i. e., the county of his residence—was an essential issue which must be determined before he could be committed to the state institution. (*Kelsey* v. *Miller,* 203 Cal. 61, 91 [263 Pac. 200].)

▉ Our conclusion is that the act does not offend the due process clause in so far as the county is concerned because the county is not a "person" within the meaning of either the federal or the state Constitution, but is a mere subdivision of the state, and, in so far as the individual taxpayer of the county is concerned, his property is not taken without due process because when the legislature itself fixes the taxing district (i. e., the county), it is presumed to have taken such evidence upon the question of benefits to the local taxpayer as may be necessary and its determination of that matter is conclusive. (*People* v. *Sacramento Drain. Dist.,* 155 Cal. 373, 386 [103 Pac. 207]; *Brookes* v. *Oakland,* 160 Cal. 423, 427 [117 Pac. 433]; *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 171 [17 Sup. Ct. Rep. 56, 41 L. Ed. 369].) The right which the taxpayer then has is not a right to question the public necessity for the tax which he is to pay. (Idem.) This right is preserved in the general tax laws, but it is not necessary to make specific references

to these provisions because no taxpayer of San Mateo County is proceeding under them.

Let a writ issue as prayed.

Sturtevant, J., and Spence, J., concurred.