[Civ. No. 57988. Second Dist., Div. Five. Nov. 26, 1980.]

SANTA MONICA COMMUNITY COLLEGE DISTRICT, Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent; SANTA MONICA COLLEGE UNIFIED FACULTY ASSOCIATION, Real Party in Interest.

**COUNSEL**

Paterson & Taggart, James C. Romo, Lee T. Paterson and Mary Jo McGrath for Petitioner.

Barry Winograd for Respondent.

Schwartz, Steinsapir, Dohrmann & Krepack, Schwartz, Steinsapir, Dohrmann, Krepack, Sommers & Edelstein, Robert M. Dohrmann and Michael R. Feinberg for Real Party in Interest.

**OPINION**

ASHBY, J.—This is a proceeding pursuant to Government Code section 3542[1] to review a decision of the respondent Public Employment Relations Board (PERB) which found that the petitioner Santa Monica Community College District (District) had committed unfair labor practices within the meaning of section 3543.5.

Real party Santa Monica Unified Faculty Association (Part-Time Faculty) and Santa Monica Faculty Association (Association) were both involved in salary negotiations with District. On May 21, 1976, Part-Time Faculty filed a representation petition to establish a bargaining unit to include all faculty, both full and part time. Association filed its petition in intervention on June 11, 1976, seeking to represent the same employees and also seeking certification as the bargaining representative for a smaller group of employees which would exclude part-time faculty.[2] On March 29, 1976, Part-Time Faculty requested information from District relating to the anticipated layoff of part-time instructors. The request was partially complied with. District, however, refused to disclose the criteria it was using in determining the reduction

[1]All statutory references are to the Government Code unless otherwise indicated.

[2]An election was eventually held on March 16, 1978, which resulted in the Association certification as the exclusive representative of a unit whose composition was agreed to by stipulation.

in staff. Part-Time Faculty made a follow-up request for this information and also for the identity of terminated personnel. On June 3, 1976, District, citing the right of privacy of faculty members who were laid off, replied that it would not divulge the requested information except to the individual faculty members who had been dismissed. On June 17, 1976, both Part-Time Faculty and Association were requested to prepare salary proposals for both full-time and part-time faculty members. On June 21 both organizations made presentations to District which authorized a salary increase of 8 percent to the members of each organization on the condition that the organizations agree to waive their collective bargaining rights with respect to compensation for the next school year. Association accepted the condition and an 8 percent pay increase was awarded to full-time faculty. District took no action on pay increases for part-time faculty but notified part-time faculty that the offer of the 8 percent increase would remain open until June 30. The executive committee of Part-Time Faculty refused the board's offer and stated that it was not worth the effort of taking it to their members. As a result of that decision, the pay rate for part-time employees remained at $14.75 per hour and the rate for full-time employees became $16 per hour.

On July 1, 1976, section 3543.5 became operative. It provided in part as follows: "It shall be unlawful for a public school employer to: [¶] (a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter. [¶] (d) Dominate or interfere with the formation or administration of any employee organization, or contribute financial or other support to it, or in any way encourage employees to join any organization in preference to another." On July 10, 1976, however, the Legislature retroactively amended section 3543.5 to make it operative on April 1, 1976.

On November 15, 1976, Part-Time Faculty filed an unfair practice charge against District claiming a violation of section 3543.5 for actions taken by District during the period of April 1 to July 1, 1976. PERB held a hearing and after the hearing rendered a decision finding that by granting pay raises to full-time faculty while withholding them from part-time faculty because of the refusal to waive collective bargaining rights District discriminated in favor of Association and against Part-Time Faculty in violation of section 3543.5, subdivision (a). PERB fur-

ther found that District's action with respect to salary constituted interference with the employee rights guaranteed by section 3543 in that it encouraged employees to join one organization in preference to another in violation of section 3543.5, subdivision (d). PERB ordered District to cease and desist from violations of the above subdivisions and directed District to pay each part-time employee as of September 1 the $1.25 increase in salary, which had been denied. District was also ordered to pay 7 percent interest on the back pay owed from September 1, 1976, to the date of payment.

In addition, District was directed to post a copy of PERB's order in conspicuous places on campus and to distribute a copy of the order to each of its part-time employees as of September 1, 1976.

The crucial issue before us is whether the retroactive application of section 3543.5 is proper under the facts of this case. We hold that it is.

### DISCUSSION

District's initial argument is that the statute retroactively altering the effective date of section 3543.5 "should be declared unlawful since it gives to actions previously taken a different legal effect than they had at the time it [*sic*] occurred." District further characterizes the situation as "inconsistent with California case law prohibiting retroactive application of laws...."

The cases upon which District relies (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388 [182 P.2d 159]; *Pignaz* v. *Burnett* (1897) 119 Cal. 157 [51 P. 48]; *Bear Valley Mut. Wat. Co.* v. *County of San Bernardino* (1966) 242 Cal.App.2d 68 [51 Cal.Rptr. 53]; *Helm* v. *Bollman* (1959) 176 Cal.App.2d 838 [1 Cal.Rptr. 723]) all involve questions of statutory interpretation and reaffirm the judicial canon that statutes are not to be applied retroactively unless it clearly appears that such was the legislative intent. (See, e.g., *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d 388, 393.) In the instant case, the explicit purpose of the amendment to section 3543.5 was to make its application retroactive.

It is not for us to question the wisdom of such an enactment. We can declare it invalid only if it contravenes a specific provision of the

state or federal Constitutions. Since the subject matter of the statute and the penalties imposed for its violation are both civil, not criminal, the ex post facto provisions of the Constitution do not apply. (*Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386 [1 L.Ed. 648]].)

District does not assert a violation of constitutional guarantees of due process. ██ The reason for this omission is undoubtedly the long line of cases which hold that a public entity, being a creature of the state, is not a "person" within the meaning of the due process clause, and is not entitled to due process from the state. (*Coleman* v. *Miller* (1939) 307 U.S. 433 [83 L.Ed. 1385, 59 S.Ct. 972, 122 A.L.R. 695]; *Williams* v. *Mayor* (1933) 289 U.S. 36 [77 L.Ed. 1015, 53 S.Ct. 431]; *Trenton* v. *New Jersey* (1923) 262 U.S. 182 [67 L.Ed. 937, 43 S.Ct. 534, 29 A.L.R. 1471]; *Pawhuska* v. *Pawhuska Oil Co.* (1919) 250 U.S. 394 [63 L.Ed. 1054, 39 S.Ct. 526]; *City of Los Angeles* v. *City of Artesia* (1977) 73 Cal.App.3d 450 [140 Cal.Rptr. 684]; *Riley* v. *Stack* (1932) 128 Cal.App. 480 [18 P.2d 110].)

Although we find this rule shocking in the abstract and unfair in its application to District, we feel constrained by the many cases which have enunciated it, to conclude that District cannot claim the protection of the due process clause.[3] Notwithstanding, since the retroactive application of section 3543.5 does in fact give a misleading impression of intentional wrongdoing by District which would be exacerbated by requiring District to post and distribute PERB's order, District may mitigate this effect by inserting in the order the following statement: The actions by District now characterized by PERB as violations were not unlawful when taken but became unlawful solely as the result of a retroactive change in the law.

██ District next asserts that it did not violate section 3543.1, subdivision (a), or 3543.5, subdivision (b), by withholding information from Part-Time Faculty. District argues that section 3543.1, subdivision (a), gives a nonexclusive employee organization, such as Part-Time Faculty then was, a right to represent only their own members,[4] that District

---

[3]It should perhaps be noted, in' fairness to PERB, that District's denial of a pay increase to part-time employees operated prospectively to a time after July 1, 1976; and that PERB's order directing payment of the wage increase was retroactive only to September 1, 1976.

[4]Section 3543.1, subdivision (a) provides: "Employee organizations shall have the right to represent their members in their employment relations with public school em-

was not aware of just who Part-Time Faculty's members were, and that Part-Time Faculty was seeking information as to all part-time faculty members who had received termination notices, whether members of real party or not.

The interpretation which District urges for section 3543.1, subdivision (a), is far too narrow. Any commonsense assessment of the statutory right conferred by section 3543.1, subdivision (a), must recognize the necessity for access to information about general employment policies and not just to data relating to the organization's members.

District offers as further justification for its refusal to disclose the information sought by Part-Time Faculty its concern for the right to privacy of its employees. The refusal to disclose the criteria District was using to determine who would be terminated can hardly be justified on this ground. As for the identity of terminated employees, since District had disclosed this information, apparently without objection, in response to a subpoena prior to PERB's decision, PERB might well have concluded that the initial assertion of the claimed right was not made in good faith.

■ With respect to the disputed wage increase, District argues that its conduct did not discriminate in favor of one organization over the other. That, essentially, was a factual issue for PERB's determination.

■ There is no merit to District's further assertion that PERB lacked power to order an award of retroactive active pay in connection with the commission of an unfair practice. That power is provided for by section 3541.5, subdivision (c). The amount of the raise having been fixed by District and the only condition to its acceptance having been an unlawful waiver of statutory rights, PERB was not fashioning a contract for the parties by ordering the retroactive raise, but merely taking

---

ployers, except that once an employee organization is recognized or certified as the exclusive representative of an appropriate unit pursuant to Section 3544.1 or 3544.7, respectively, only that employee organization may represent that unit in their employment relations with the public school employer. Employee organizations may establish reasonable restrictions regarding who may join and may make reasonable provisions for the dismissal of individuals from membership."

remedial action to eliminate the effects of the discriminatory unfair practice.

The decision of the Public Employment Relations Board is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied January 28, 1981.