[Civ. No. 6056. Fifth Dist. June 10, 1983.]

ROBERT E. DRUM et al., Plaintiffs and Respondents, v.
FRESNO COUNTY DEPARTMENT OF PUBLIC WORKS et al.,
Defendants and Appellants.

COUNTY OF FRESNO, Plaintiff and Appellant, v.
ROBERT E. DRUM et al., Defendants and Respondents.

**COUNSEL**

Floyd R. B. Viau, County Counsel, and Thomas J. Riggs, Chief Deputy County Counsel, for Defendants and Appellants and Plaintiffs and Appellants.

Fullerton, Lang, Richert & Patch, Douglas E. Noll, Oren, Oren & Oren and Donald E. Oren for Plaintiffs and Respondents and Defendants and Respondents.

OPINION

**ANDREEN, Acting P. J.**—Following the issuance of a zoning variance and building permit, respondents Robert and Terry Drum commenced construction of a two-story addition to their home. The structure was to have a garage on the ground floor and two bedrooms and bath on a second story. Deeming it in excess of the terms of the variance, the appellant, County of Fresno (hereafter County), issued a stop-work order.

The Drums filed a petition for an alternative writ of mandate against the County. The County filed a complaint for injunctive relief, and a request for a preliminary injunction. The matters were consolidated for hearing. From an adverse judgment in both matters, the County appeals.

### FACTS

The Drums requested a variance by filing an application with the County which stated: "Variance to waive front and side yard requirements to allow 9' front yard and 8' side yard to construct 36' by 26' garage. Original garage converted to storage and utility room with major plumbing alteration. To remove auto and recreation vehicles from driveway."

A narrative explanation accompanied the application and dealt exclusively with the Drums' need for a garage to house their vehicles and how this would enhance the neighborhood by reducing unsightly on-street parking and prevent mischief to the vehicles. The narrative also recited, "We have discussed our plans and reviewed the siteplan with our neighbors to see if there were any objections. There are none as indicated by our neighbors' signatures on the attached letter."

The letter, which is in the form of a petition and bears 18 signatures, reads in full: "We have reviewed Mr. Drum's site plan to waive front and side yard requirements to allow nine (9) foot front yard and eight (8) foot side yard. This will allow for the construction of a 36-foot by 26-foot garage. It will not be detrimental to the neighborhood and will provide shelter and security for vehicles now parked on driveway."

At the time the application and narrative were submitted the Drums also submitted a site plan showing the existing structures on his property and showing the proposed new garage to be located within the required front and side yard setbacks. The site plan does not indicate the garage will be a two-story structure.

In each of the documents signed, filled out, or prepared by respondent the variance is described as one for a "garage"; no mention is made of a two-story structure or of living quarters to be included in or on top of the proposed garage.

In October 1979, a staff analyst with the planning department, Mr. Poeschel, prepared and caused to be sent a notice of hearing to all property owners within 600 feet of the Drum property as required by state and local codes. The notice of hearing described the proposal as one to reduce the setback requirements *to allow construction of a garage.*

Prior to the hearing Mr. Poeschel prepared a staff report for the planning commission. It referred to the site plan submitted by the Drums which depicted the proposed garage. The staff report referred only to the necessity for the proposed garage within the side yard and front yard setbacks and did not mention or allude to any accessory living quarters.

On November 8, 1979, the hearing on the variance was held before the Fresno County Planning Commission. At the hearing, Poeschel submitted the staff report to the commission. The staff report prepared for the planning commission referred to the site plan prepared by Drum which depicted the "proposed 936 square foot garage." The staff report discussed the findings of fact which the planning commission was required to make before it could grant the variance, and the discussion related solely to the facts that there was no existing garage, that other variances for garages and carports had been granted in the same neighborhood, that the construction of a garage would clear the driveway of parked vehicles, that the resulting shortened driveway might be dangerous and that a 36-foot by 26-foot garage might have a significant visual impact on the neighborhood.

At the conclusion of Poeschel's report, respondent testified before the commission on his own behalf and in support of the variance. He discussed the need for a proposed garage within the setbacks but made no mention of the proposed structure being two stories or containing any living quarters. He also submitted to the commission the petition signed by his neighbors. No one appeared in opposition to the proposed variance. The matter was submitted to the commission which approved the variance application. The motion for approval was limited to granting the variance only for the allowance of the construction of a garage.

The resolution adopted by the Fresno County Planning Commission stated:

"WHEREAS, Variance Application No. 2527 was filed . . . seeking to reduce . . . setback requirement . . . on a lot . . . in the R-1-AH . . . Zone District. . . .

"Now, THEREFORE, BE IT RESOLVED that this Commission hereby adopts the proposed findings of fact in the attached Report; and

"BE IT FURTHER RESOLVED that this Application is hereby granted."

After the variance was granted, respondents decided to add the second story, containing two bedrooms and a bath with enclosed staircase. On January 11, 14, 17, 18, and 29 of 1980, they submitted the plans for the two-story structure to the Fresno County Department of Public Works, in ever-increasing detail at the department's direction.

On February 6, 1980, all of the required documentation had been included on the plans and the building plans and specifications were approved by the department and the building permit for a two-story addition was issued.[1]

Between February 19 and February 22, 1980, Mr. Robert Grim, the supervisor of the division of the Fresno County Public Works Department which issues building permits, received a number of telephone calls from neighbors of the Drums questioning whether the second story being constructed on the Drums' new garage was permitted by the variance. Over the course of the next few days Mr. Grim discussed the issue with Mr. Drum and legal counsel. He concluded that no stop-work order should be issued. He later reviewed the file on the Drum variance and listened to a tape recording of the planning commission hearing at which the variance was granted. He concluded the variance was limited to a waiver of the front and side yard setback requirements for a garage only and not for second-story accessory living quarters. Thereafter, the County delivered a stop-work order at the job site of the construction. The stop-work order states: "Failed to comply with variance number 2527 which permits the construction of a garage only and permit being issued in error." This litigation ensued.

### WAS ADEQUATE NOTICE OF THE PROPOSED CHANGE GIVEN TO THE NEIGHBORS?

The court found the planning commission had authority to make the variance conditional but did not do so. The court noted that Government Code section 65906 provides variances "shall be subject to . . . conditions" and

---

[1]The County cannot be estopped by reason of the issuance of the building permit. (*Pettitt v. City of Fresno* (1973) 34 Cal.App.3d 813, 819-824 [110 Cal.Rptr. 262].)

Fresno County Zoning Ordinance (FCZO) section 877(B)(6)(c) provides the commission "shall approve, approve with stated conditions, or disapprove" the application for a variance. The court held that once the variance of the setback requirements was granted without further conditions the Drums were free to build any height building allowable. The Drums' property is zoned to allow two-story buildings and therefore the unconditional grant of a variance, the court concluded, permitted the construction of the two-story structure.

This essentially is respondents' position on appeal also: the variance is silent about the height of the proposed structure and, absent such a stated condition, respondents are free to build up to the two-story height limits of their zone. As the court stated, "once [the variance was] granted, the Drums' intention [to build a garage] did not rise to a 'stated condition' without specific mention by the Commission and is therefore inconsequential in the posture of the case at bar." This reasoning would be correct and would support affirming the trial court's conclusions and orders but for the due process and statutory problem of insufficient notice, which was raised below.

Notice and an opportunity to be heard are due process prerequisites for adequate administrative proceedings. (*Anderson Nat. Bank* v. *Luckett* (1944) 321 U.S. 233, 240-247 [88 L.Ed. 692, 701-705, 64 S.Ct. 599, 151 A.L.R. 824].) Granting a variance is an administrative or quasi-judicial matter and as such requires, at a minimum, due notice and a fair hearing. (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612-615 [156 Cal.Rptr. 718, 596 P.2d 1134]; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 517 [113 Cal.Rptr. 836, 522 P.2d 12]; *Kennedy* v. *City of Hayward* (1980) 105 Cal.App.3d 953 [165 Cal.Rptr. 132].) State and local law therefore require notice of the hearing on the variance be given to nearby property owners. (Gov. Code, §§ 65901, 65905; FCZO, § 877(B)(5)(c).)

Neither the state statutes nor the local ordinance specify in particular what the contents of the required notice must be. (*Ibid.*) Decisional law makes clear, however, that the required notice must be adequate in light of the purpose to be served. "[W]here, as here, prior notice of a potentially adverse decision is constitutionally required, that notice must, at a minimum, be reasonably calculated to afford affected persons the realistic opportunity to protect their interests. [Citations.]" (*Horn* v. *County of Ventura, supra,* 24 Cal.3d at p. 617.) Several cases have held that to be adequate "the notice must be such as would according to common experience be reasonably adequate to the purpose." (See, e.g., *Kennedy* v. *South Coast Regional Com.* (1977) 68 Cal.App.3d 660, 670-672 [137 Cal.Rptr. 396]; *Litchfield* v.

*County of Marin* (1955) 130 Cal.App.2d 806, 813 [280 Cal.Rptr. 117].) " '[C]ommon sense and wise public policy . . . require an opportunity for property owners to be heard before ordinances which substantially affect their property rights are adopted. . . .' " (*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 548-549 [99 Cal.Rptr. 745, 492 P.2d 1137].)

We conclude the notice given to the neighbors did not meet the statutory or due process requirements. Giving the neighbors notice a variance was being sought to build a garage to "provide shelter and security for vehicles now parked on driveway" was a far cry from being adequate to apprise them their property interests would in fact be affected by a second-story dwelling/garage unit. The word "garage" connotes a structure of uncertain size for the housing of vehicles, with perhaps a small shop area. It does not mean a two-story building with two bedrooms and a bath on top.

Wholly inaccurate notice is no notice at all. A variance granted without the mandated reasonably adequate notice cannot be construed as granting a privilege beyond that of which notice was given. Such a conclusion is compelled because the notice statutes are mandatory. (Gov. Code, §§ 14, 65901, 65905; FCZO, § 877(B)(5)(c).)

■ Respondents contend without citation of authority that any due process argument on the basis of defective notice may not be raised by the County, but must be raised by the affected property owners.[2] Independent

---

[2]On a petition for rehearing, the Drums took note of our sentence: "Respondents contend without citation of authority that any due process argument on the basis of defective notice may not be raised by the County, but must be raised by the affected property owners." Accepting this as an invitation to submit authority, Drums have offered several citations. They are inapposite.

Drums cite *Riley* v. *Stack* (1932) 128 Cal.App. 480 [18 P.2d 110]. A superior court sitting in San Francisco committed a drug addict to a state institution. Pursuant to statutory direction, it found that the addict was a resident of San Mateo County and ordered the county to pay the state for his support. The county was not a party to that litigation. In an original proceeding in mandamus, the state brought an action against county officials to enforce the support order. The county contended it had a right to be heard under the due process clause before an obligation to pay was placed upon it. The court held that a county is not a "person" within the clause, but merely a political subdivision of the state over which the Legislature has the inherent right to prescribe obligations. *Riley* merely asserts state supremacy over its political subdivisions. It is in accord with established law. (*Risty* v. *Chicago, R.I. & P. Ry. Co.* (1926) 270 U.S. 378, 390 [70 L.Ed. 641, 651, 46 S.Ct. 236]; *Hunter* v. *Pittsburgh* (1907) 207 U.S. 161 [52 L.Ed. 151, 28 S.Ct. 40].) It is no holding that a political subdivision lacks standing to object to inadequate notice given to its citizens, who, unquestionably, are "persons" within the Fourteenth Amendment.

*Santa Monica Community College Dist.* v. *Public Employment Relations Bd.* (1980) 112 Cal.App.3d 684 [169 Cal.Rptr. 460] merely holds that a school district may not invoke the due process clause to avoid retroactive legislation affecting the question of whether or not it engaged in unfair labor practices. (At p. 690.)

*Azusa Western, Inc.* v. *City of West Covina* (1975) 45 Cal.App.3d 259 [119 Cal.Rptr. 434] was an action by a subcontractor against a city. The subcontractor filed a stop notice,

research disclosed a case in which, although the point was not argued, the court held that lack of notice was jurisdictional in an action between the applicant for a building permit and a city supervisor of buildings. (*Hendey* v. *Ackerman* (1927) 103 N.J. 305 [136 A. 733].) The affected property owners were not parties to the litigation.

It would serve no legitimate interest to hold that appellant may not invoke lack of notice to its citizens in order to enjoin construction of respondents'

but the city paid the contract amount to the contractor without following statutory require-ments for a bond. The city raised the issue of whether the stop notice provisions were in violation of *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820] and its progeny. The appellate panel held that the city could not invoke whatever rights the contractor might have had under *Sniadach* to insist on full payment by the city. This issue was collateral to the question before the court, which was the failure to secure a proper bond, which resulted in a loss to the subcontractor. In the case before us, the issue is whether a variance of setback requirements in order to permit the construction of a garage could create the right to build a two-story garage with living quarters where the affected property owners had no notice and no opportunity to be heard on anything other than the construction of a garage.

*Community Television of So. Cal.* v. *County of Los Angeles* (1975) 44 Cal.App.3d 990 [119 Cal.Rptr. 276], insofar as here applicable, holds no more than that a political subdi-vision may not contend that a state statute providing for exemption of nonprofit educational television stations from property tax is unconstitutional. (At p. 998.)

*United States* v. *City of Pittsburg, Cal.* (9th Cir. 1981) 661 F.2d 783, held that a federal law which permitted letter carriers to take a shortcut across a homeowner's lawn unless the homeowner objects preempted a city ordinance which stated that the carrier could take the shortcut only with the express consent of the owner. The city contended that crossing the lawns without express consent was an unconstitutional taking of property without just com-pensation. To this absurd contention, the court had two answers: lack of standing and that crossing the lawn to make a mail delivery was too miniscule to constitute a taking. (At pp. 786-787.) The invocation by the city of its citizen's rights to remain free of a taking of property without just compensation is different than the invocation by a local authority of the right to insist upon its own requirements of due notice of a variance application to adjoining property owners.

*In re Multidistrict Vehicle Air Pollution M.D.L. No. 31* (9th Cir. 1973) 481 F.2d 122, the court held that an air pollution district could not bring an action under section 4 of the Clayton Act, 15 United States Code section 15, because of a failure to allege injury to business or property. In dicta, and in discussing federal law, there is a statement that polit-ical subdivisions such as counties may not sue as *parens patriae*. (At p. 131.) We fail to see any relevance.

In its response to the petition for a rehearing, the County makes a point well. We quote from it verbatim: "The construction of local government ordinances and resolutions is gov-erned by the rules governing construction of statutes. A well-established rule of statutory construction is that a statute will be given a meaning consistent with constitutional require-ments if this can be done by fair and reasonable construction. (45 Cal.Jur.3d, Municipalities, § 209, p. 327; 58 Cal.Jur.3d, Statutes, § 97, pp. 458-459; *County of Los Angeles* v. *Legg* (1936) 5 Cal.2d 349.) Thus, a Planning Commission resolution granting a variance must, if possible, be read in a manner that reaches a constitutional result. The law is quite clear that the Planning Commission is without constitutional power to grant a variance unless the affected neighbors have been given adequate notice of the subject matter to be considered at the variance hearing. (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612-615; . . . Gov. Code § 65901.) Because the neighbors received notice only of the possible grant of a vari-ance to allow the construction of a garage, the only constitutional manner in which to construe the Planning Commission resolution is to find that it was limited to the grant of a variance for the construction of a garage without a second floor and living quarters."

building. Surely it should be able to invoke its own requirements of notice in order to preserve the public interest in preserving community patterns established by zoning laws.

During oral arguments, the Drums contended section 877, subsection D, of the Fresno County Code provides administrative review in a case such as this. They invoke the familiar exhaustion of administrative remedies rule. The subsection provides, in part, "The Commission may revoke any variance for noncompliance with the conditions set forth in granting said variance after notice and hearing." The fallacy of the argument is that the section applies to noncompliance with *conditions*. The trial court found, and the Drums contend on appeal, that there was no condition imposed in the variance. Subsection D does not address the issue of the procedure to be taken when notice to nearby property owners does not adequately apprise them of the improvement to be built.

The judgments are reversed. The trial court is ordered to vacate its order dated June 10, 1980, whereby it issued a writ of mandate. The court is ordered to grant the preliminary injunction.

Hamlin, J., and Martin, J., concurred.

A petition for a rehearing was denied July 8, 1983, and respondents' petition for a hearing by the Supreme Court was denied September 29, 1983.