[No. A132385. First Dist., Div. Four. July 20, 2012.]

WENDY ROBINSON et al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent;
T-MOBILE WEST CORPORATION et al., Real Parties in Interest and
Respondents.

COUNSEL

Law Offices of Stephan C. Volker, Stephan C. Volker, Alexis E. Krieg and Daniel P. Garrett-Steinman for Plaintiffs and Appellants.

Dennis J. Herrera, City Attorney, Kristen A. Jensen, Victoria Wong and Andrea Ruiz-Esquide, Deputy City Attorneys, for Defendant and Respondent.

Davis Wright Tremaine, Martin L. Fineman and Jeanne M. Sheahan for Real Parties in Interest and Respondents.

OPINION

**RUVOLO, P. J.**—This appeal arises from the denial of a petition for writ of mandate (writ petition) brought under the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000 et seq.) The writ petition sought to overturn the decision of respondent City and County of San Francisco (the City) to permit real parties in interest and respondents T-Mobile West Corporation, T-Mobile USA, Inc., T-Mobile Resources Corporation, and Omnipoint Communications, Inc. (collectively T-Mobile), to place sets of wireless telecommunications equipment on existing utility poles, including a pole located near appellants' homes.[1] The trial court denied the requested relief. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

On April 6, 2009, T-Mobile filed an application with the City's planning department requesting CEQA review of a series of about 40 proposed

---

[1] Appellants are a group of individuals who reside near a particular utility pole on which T-Mobile installed a set of equipment. We refer to them collectively as "Residents."

wireless telecommunications equipment installations (the T-Mobile project).[2] The installations were to be fastened to existing utility poles at locations "distributed throughout the city and . . . not concentrated in one particular area."

On August 7, 2009, T-Mobile applied to the City's department of public works for a permit to install wireless equipment (the Randall Street equipment) on an existing utility pole in the utility right-of-way on the block of Randall Street where Residents' homes are located. Although the planning department had not yet issued its determination of T-Mobile's application for CEQA review of the T-Mobile project as a whole, T-Mobile checked a box on the permit application indicating that the installation of the Randall Street equipment was exempt from CEQA review under a categorical exemption. On August 10, 2009, the permit was issued as requested.

On September 16, 2009, and again on November 12, 2009, the planning department issued certificates of determination that the T-Mobile project was exempt from CEQA review under a categorical exemption, as set forth in "Guidelines" section 15303, subdivision (d).[3] The certificates noted that the individual installations would be "visible to passersby and observers from nearby buildings," but added that they "would not be so visually prominent that they would necessarily be noticed." The installations would be perceived in the context of existing poles and overhead wires that "are common throughout the City's urbanized environment," so that the "incremental visual effect" would be "minimal."

The Randall Street equipment was installed in late December 2009. It consists of three 26.1-inch-high, 6.1-inch-wide, 2.7-inch-deep antennas concealed within an enclosure that is affixed at the top of the utility pole and painted to match it, plus four 24-inch-high, 17-inch-wide, 11-inch-deep cabinets and a 10.88-inch-high, 8-inch-wide, 3.5-inch-deep power meter, all of which are attached to the pole at different heights.[4]

On February 5, 2010, Residents filed a petition for writ of mandate and complaint for injunctive relief in the San Francisco Superior Court. On February 17, 2011, the court entered an order denying Residents' petition for

[2] For purposes of this appeal, we assume, without deciding, that T-Mobile's multiple installations, taken together, constituted a "project" under CEQA.

[3] "Guidelines" refers to the guidelines for implementation of CEQA, which are found in California Code of Regulations, title 14, section 15000 et seq. All subsequent regulatory citations to the Guidelines are to title 14 of the California Code of Regulations.

[4] This description is derived from T-Mobile's plans for the installation, and the record indicates that the actual Randall Street equipment is essentially in accord with the plans. Residents do not appear to contend otherwise.

writ of mandate. A judgment in favor of T-Mobile and the City was entered on March 28, 2011, and filed on March 29, 2011, and this timely appeal ensued.

## DISCUSSION

### A. Failure to Conduct CEQA Review

#### 1. *Applicability of Class 3 Categorical Exemption*

Residents' first argument on appeal is that the City violated CEQA by approving the installation of the Randall Street equipment without first conducting an environmental review. T-Mobile counters that no such review was required, because the City correctly determined the installation was categorically exempt from CEQA review.

■ Certain "classes of projects [have been administratively] determined to be exempt from CEQA because they 'do not have a significant effect on the environment.' [Citation.] Such classes of projects are 'declared to be categorically exempt from the requirement for the preparation of environmental documents.' [Citation.] The determination whether a project is exempt under one of these classes is made as part of the preliminary review process prior to any formal environmental evaluation of the project. [Citation.] . . . 'Where a project is categorically exempt, it is not subject to CEQA requirements and "may be implemented without any CEQA compliance whatsoever." ' [Citation.]" (*Save Our Carmel River v. Monterey Peninsula Water Management Dist.* (2006) 141 Cal.App.4th 677, 688 [46 Cal.Rptr.3d 387] (*Save Our Carmel River*).)

A governmental agency's "determination that [a particular] project [is] exempt from compliance with CEQA requirements . . . is subject to judicial review under the abuse of discretion standard in Public Resources Code section 21168.5. [Citations.] . . . Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence. [Citation.] [¶] Where the issue turns only on an interpretation of the language of the Guidelines or the scope of a particular CEQA exemption, this presents 'a question of law, subject to de novo review by this court.' [Citations.] Our task is 'to determine whether, as a matter of law, the [project] met the definition of a categorically exempt project.' [Citation.] Thus as to the question whether the activity comes within the categorical class of exemptions, 'we apply a de novo standard of review, not a substantial evidence standard.' [Citations.]" (*Save Our Carmel River, supra,* 141 Cal.App.4th at pp. 693–694; see *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley*

*Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1386–1387 [44 Cal.Rptr.3d 128] (*San Lorenzo*).) In the present case, the City's decision that the installation was categorically exempt did not involve the resolution of any factual issue. Accordingly, we review the City's categorical exemption determination as a question of law. (See *Wollmer v. City of Berkeley* (2011) 193 Cal.App.4th 1329, 1348 [122 Cal.Rptr.3d 781] (*Wollmer*) [substantial evidence test governs review of factual determination that project is categorically exempt, but does not govern issues of interpretation of relevant statutes and regulations].)

In determining that the T-Mobile project was categorically exempt, the City relied on the set of exemptions commonly referred to as "Class 3" exemptions. These exemptions apply to the "construction and location of limited numbers of new, small facilities or structures; installation of small new equipment and facilities in small structures; and the conversion of existing small structures from one use to another where only minor modifications are made in the exterior of the structure." (Guidelines, § 15303.)

Courts have approved the application of Class 3 exemptions to projects such as the construction of a 2,700-square-foot single-family home in a residential neighborhood (*Association for Protection etc. Values v. City of Ukiah* (1991) 2 Cal.App.4th 720 [3 Cal.Rptr.2d 488] (*Ukiah*)), and a 1,500-square-foot addition to an existing structure that was intended for use as a firearms training facility. (*Simons v. City of Los Angeles* (1977) 72 Cal.App.3d 924 [140 Cal.Rptr. 484].) The T-Mobile project fits squarely within the ambit of the Class 3 exemptions. Residents have not identified any authority under which a similar or analogous project—i.e., the installation of small new equipment on numerous existing small structures in scattered locations—was held not categorically exempt under the Class 3 exemptions. Accordingly, we hold that as a matter of law, the T-Mobile project fell within the scope of the Class 3 categorical exemptions under the Guidelines.

### 2. *Cumulative Impact Exception*

■ The Guidelines provide that a project that is categorically exempt under Class 3 may nonetheless require review under CEQA if it falls within one of the exceptions to the exemptions. (Guidelines, § 15300.2.) One of those exceptions is "when the cumulative impact of successive projects of the same type in the same place, over time is significant." (Guidelines, § 15300.2, subd. (b); see *Santa Monica Chamber of Commerce v. City of Santa Monica* (2002) 101 Cal.App.4th 786, 797 [124 Cal.Rptr.2d 731] (*Santa Monica*).) "[T]he purpose of the requirement that cumulative impacts be considered . . . is to ensure review of the effects of the project in context with other projects of the same type. Thus the Guidelines expressly provide that '[c]umulative

impacts can result from individually minor but collectively significant projects taking place over a period of time.' [Citation.]" (*Save Our Carmel River, supra*, 141 Cal.App.4th at pp. 703–704.)

There is a split in the case law regarding the standard of proof and the standard of review applicable to an agency's determination whether a project falls within the cumulative impact exception to categorical exemptions. Some courts hold that a party seeking to apply an exception must " 'produce *substantial evidence showing a reasonable possibility* of adverse environmental impact sufficient to remove the project from the categorically exempt class. [Citations.]' [Citations.]" (*Fairbank v. City of Mill Valley* (1999) 75 Cal.App.4th 1243, 1259 [89 Cal.Rptr.2d 233], italics added.) Under this approach, "a court will uphold an agency's decision if there is *any* substantial evidence in the record that there will be *no* significant effect on the environment." (*Banker's Hill, Hillcrest, Park West Community Preservation Group v. City of San Diego* (2006) 139 Cal.App.4th 249, 262 [42 Cal.Rptr.3d 537], original italics, fn. omitted (*Banker's Hill*).)

Other courts hold that the government agency tasked with CEQA review of a project "must apply a *fair argument approach* in determining whether, under Guidelines section 15300.2[, subdivision ](c), there is no reasonable possibility of a significant effect on the environment" so as to bring the project within the scope of an exception. (*Banker's Hill, supra*, 139 Cal.App.4th at p. 264, italics added; see *Wollmer, supra*, 193 Cal.App.4th at p. 1350 [reviewing court must determine whether record reveals substantial evidence of fair argument of possible significant effect on the environment]; *Ukiah, supra*, 2 Cal.App.4th at pp. 733–734 [finding no fair argument to support cumulative impact exception to single-family residence categorical exemption]; cf. *Friends of the Old Trees v. Department of Forestry & Fire Protection* (1997) 52 Cal.App.4th 1383, 1395–1397 [61 Cal.Rptr.2d 297 [applying fair argument standard to issue whether to require cumulative impact analysis of timber harvest plan].) Courts that apply this standard "independently review the agency's determination under Guidelines section 15300.2[, subdivision ](c) to determine whether the record contains evidence of a fair argument of a significant effect on the environment." (*Banker's Hill, supra*, 139 Cal.App.4th at p. 264.)

In the present case, we need not resolve the question which standard applies. (See *Hines v. California Coastal Com.* (2010) 186 Cal.App.4th 830, 855–856 [112 Cal.Rptr.3d 354] (*Hines*).) As will appear from the discussion that follows, even under the more environmentally rigorous fair argument

approach, Residents have not demonstrated that the T-Mobile project is subject to the cumulative impact exception.[5]

Residents' argument is that in assessing whether the cumulative impact exception applies to the T-Mobile project, it is necessary to consider the cumulative impact of all of the telecommunications equipment that T-Mobile and other similar companies had installed, planned to install, or could install in the future, on all the utility poles located *throughout the City*. This argument ignores the language in the Guidelines limiting the cumulative impact exception to "successive projects of the same type *in the same place* . . . ." (Guidelines, § 15300.2, subd. (b), italics added.) This limitation makes sense, because without a limitation as to the location of the projects whose cumulative impact must be considered, agencies deciding whether the exception applies to a project would be required, in every instance, to consider the cumulative environmental impact of all successive similar projects in their jurisdictions, at least, and perhaps regionally or even statewide. If this were the case, the exception would swallow the rule, and the utility of the Class 3 exemption would be vitiated.

Thus, we reject Residents' argument that the City was obligated, in determining whether the T-Mobile project fell outside the Class 3 exemption, to consider the cumulative impact of all similar telecommunications installations throughout the entire City and County of San Francisco. Rather, under the language of the Guidelines, Residents can prevail only if there is a fair argument that an adverse environmental impact would result from the cumulative impact of successive telecommunications installations "in the same place."

■ The meaning of the term "the same place" in this context is not self-evident. Neither party has cited any authority interpreting this language,

---

[5] We also need not decide whether the trial court erred in admitting in evidence the declaration by appellant Robinson that was filed with the trial court, but not included in the administrative record. Whether or not the trial court was correct in admitting this declaration does not affect the outcome of this appeal, because considering the declaration would not affect our conclusions. The declaration avers that the Randall Street equipment is a "highly visible blight," "greatly obstructs" the view from Robinson's property, generates "unpleasant and disruptive" noise, and diminishes the value of Robinson's property. These conclusory statements do not controvert the documents and photographs in the record demonstrating that the T-Mobile project consisted entirely of "installation of new equipment and facilities in small structures." (Guidelines, §15303.) This is all that is required to place the project squarely within the scope of the categorical exemption. Thus, considering the Robinson declaration would not affect our conclusion that the T-Mobile project was categorically exempt under Class 3 as a matter of law. Nor would the declaration affect our conclusions, discussed *post*, that the cumulative impact exception does not apply, and that the installation of the Randall Street equipment did not have a significant or substantial impact on Residents' property for due process purposes.

as used in Guidelines section 15300.2, subdivision (b), and our research has disclosed none.[6] Given the overall purpose and logic of CEQA and the Guidelines, we construe "the same place" to refer to an area whose size and configuration depend on the nature of the potential environmental impact of the specific project under consideration. For example, in determining whether there may be a cumulative impact from an otherwise categorically exempt project that may affect water quality in a stream, consideration must be given to potential similar projects located in the watershed of the same stream. For a project producing noise pollution, the area to be considered would be that within which the noise could be expected to be audible.

In the present case, Residents have specified only the T-Mobile project's visual and auditory impacts as the environmental damage they contend resulted from the project. Those impacts are inherently limited by the range of human sensory perception. Thus, with respect to this project, the cumulative impact exception applies only if the record contains evidence supporting a fair argument that potential future installations of similar equipment are likely to occur *within visual or auditory range* of an installation included in the T-Mobile project.

As noted by the City in its determination that the T-Mobile project was exempt from CEQA, the locations of the installations included in the project were "widely dispersed"; they were "distributed throughout the city and . . . not concentrated in one particular area." Residents have identified no facts in the record indicating that ány of the installations at issue are within visual or auditory range of other similar installations that currently exist or are likely to be created. On the contrary, the only evidence on this issue in the record is the City's finding that "all of the existing and proposed" similar installations by other telecommunications companies were or would be placed "separately at different locations" so that there were "no foreseeable cumulative impacts." Accordingly, Residents have failed to produce substantial evidence supporting a fair argument that the cumulative impact of the T-Mobile project, when considered together with other similar installations, will have an adverse visual or auditory impact on the environment.

Rather, Residents' argument amounts to a speculation that future installations *may* occur within sensory range of the installations included in the T-Mobile project. However, speculation that potential future projects

---

[6] In *Santa Monica, supra,* 101 Cal.App.4th 786, the court assumed that for the purpose of assessing the cumulative impact of successive residential parking permit plans developed by a city, the relevant area was the entire city. (*Id.* at pp. 797–798.) However, the court posited this assumption without any discussion or analysis. It also is not part of the holding of the case, because the court found the cumulative impact exception inapplicable on the ground that the parking plans had no environmental impact, even when considered cumulatively. (See *id.* at pp. 797–799.)

similar to the one under consideration *could* cause a cumulative adverse impact is not sufficient to negate a categorical exemption. (*Hines, supra,* 186 Cal.App.4th at pp. 857–858 [single-family residence did not fall outside categorical exemption due to theoretical possibility that additional residences could be approved for construction in same area].) In the absence of evidence supporting a fair argument that future telecommunications installations will likely be located within sensory range of the installations included in the T-Mobile project, the categorical exemption here is not negated by the cumulative impact exception.[7]

## B. Timing of Permit Issuance

As noted in the statement of facts, when the City's public works department issued a permit allowing T-Mobile to proceed with the project, the City's planning department had not yet issued its certification (CEQA exemption certificate) that the T-Mobile project was exempt under CEQA. In addition, the City's department of public health (DPH) did not issue its certification (DPH approval) that the T-Mobile project would produce an acceptable level of radio frequency (RF) emissions, as required by section 11.9 of the San Francisco Administrative Code and implementing City regulations, until after the permit had been issued.

Residents assert that the City thereby violated its own laws and regulations, as well as CEQA's requirement that any required environmental review be completed before an agency approves a project. Residents do not dispute that the DPH approval was eventually obtained, nor do they challenge the substantive propriety of that approval. The record shows, and Residents do not dispute, that the Randall Street equipment, in particular, was not installed until after both the CEQA exemption certificate and the DPH approval had been obtained. Indeed, Residents have not pointed to any evidence in the record indicating that *any* of the installations included in the T-Mobile project were actually carried out before the issuance of the CEQA exemption certificate and the DPH approval. Nonetheless, Residents argue that the City's issuance of the permit in advance of the CEQA determination and the DPH approval requires that the City's approval of the T-Mobile project be set aside.

Residents have not cited any authority holding that a permit must be retroactively invalidated if required approvals were obtained after, rather than before, the permit was issued. Such a holding would be absurd, particularly

---

[7] Because we uphold the City's determination that the T-Mobile project is exempt under the Class 3 exemptions, we need not consider Residents' challenges to the trial court's alternative holding that the so-called "common sense" exemption applies.

where, as here, it appears that the actual work authorized by the permit did not occur until after all of the necessary approvals had in fact been obtained. None of these authorities on which Residents rely persuades us that they are entitled to the relief they seek.

██ Residents cite *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 394 [253 Cal.Rptr. 426, 764 P.2d 278] (*Laurel Heights*) for the proposition that CEQA does not permit the use of "*post hoc* rationalizations to support action already taken." *Laurel Heights*, however, involved the adequacy of an environmental impact report for a project that unquestionably required full-scale review under CEQA. Residents have not cited any case holding that an agency violates CEQA by issuing a permit for a project that is *categorically exempt* from CEQA review, merely because the agency had not yet certified the exemption in writing before issuing the permit. In fact, "there is no requirement that [an] agency put its exemption decision in writing" at *any* time, and the Guidelines expressly provide that notice of a categorical exemption determination not only need not, but *should* not be given until *after* the project is approved. (*San Lorenzo*, *supra*, 139 Cal.App.4th at p. 1385; see Guidelines, § 15062, subd. (a).)

*Davidon Homes v. City of San Jose* (1997) 54 Cal.App.4th 106 [62 Cal.Rptr.2d 612] (*Davidon Homes*) is also distinguishable. That case involved a project that the City of San Jose claimed was exempt under the "common sense exemption" codified in section 15061, subdivision (b)(3) of the Guidelines. This exemption requires the agency to be certain that there is no possibility the project may cause significant environmental impacts. The court in *Davidon Homes* held that the city erred in failing to conduct an initial review to determine that the commonsense exemption applied, before proceeding to approve the project. In so doing, however, the court *distinguished* the commonsense exemption from categorical exemptions.

██ As the *Davidon Homes* court explained, categorical exemptions are "based on a finding by the Resources Agency that a class or category of projects does not have a significant effect on the environment. [Citations.] Thus an agency's finding that a particular proposed project comes within one of the exempt classes necessarily includes an implied finding that the project has no significant effect on the environment. [Citation.]" (*Davidon Homes*, *supra*, 54 Cal.App.4th at p. 115.) On the other hand, where an agency relies on the commonsense exemption, "the agency's exemption determination is not supported by an implied finding by the Resources Agency that the project will not have a significant environmental impact. Without the benefit of such an implied finding, the agency must itself provide the support for its decision before the burden shifts to the challenger." (*Id.* at p. 116.) Here, because the

City relied on the Class 3 categorical exemption, it was not required to assess the potential environmental impact of the T-Mobile project *before* issuing a permit for it, because by creating the categorical exemption, the Resources Agency had already impliedly found there would be no such impact.

Finally, *Pacifica Corp. v. City of Camarillo* (1983) 149 Cal.App.3d 168 [196 Cal.Rptr. 670] (*Pacifica*), is also distinguishable. Residents cite that case for the proposition that when a city fails to follow its own requirements for approving projects, the city cannot excuse the violation by complying with the requirements after the fact. In *Pacifica*, the city had adopted a residential growth-control ordinance that limited the number of new residential units that could be constructed each year, and provided that proposed developments were to be ranked annually according to specified criteria before being allotted a portion of the available units for a given year. (*Id.* at pp. 172–173.) Before awarding annual development allotments, the city council was required to adopt a final ranking list by merging two lists compiled by an evaluation board, one ranking the proposed developments for their impact on city services and facilities, and the other ranking them for their contribution to public amenity and welfare. (*Id.* at pp. 172–173, 180.)

The developer involved in *Pacifica* did not receive the allotment it requested in a particular year, and brought a mandamus action seeking to set aside the allotment awards that went to developers who ranked lower than Pacifica according to the city's criteria. Because the city council had not adopted the required final ranking list before making its allotments, Pacifica argued that the allotments were invalid under the terms of the ordinance. (*Pacifica*, *supra*, 149 Cal.App.3d at pp. 180–181.) The city countered that the city council's adoption of the actual allotments cured the defect, and that in any event, the error was harmless. The court disagreed, holding that "the process of adopting a final ranking before awarding allotments [was] essential to the orderly implementation . . ." of the growth control ordinance. (*Id.* at p. 181, italics omitted.) The court reasoned that the requirement that the city council adopt a final ranking merging the two lists was designed to ensure that the council would "undertake its own assessment of each development" *before* making allotments. (*Ibid.*) Essentially, the ordinance made it the city council's task to balance the weight of the criteria involved in the ranking process by merging the two separate lists into one. Because the record did not show that the city council had fulfilled this requirement, its adoption of the allotments was invalid.

Here, on the other hand, the record demonstrates that the City in fact undertook, and correctly completed, every aspect of the decisionmaking process it was required to follow under its own ordinances and regulations. Residents have not demonstrated that requiring the City to redo that process

in the correct order could possibly yield a different outcome. Accordingly, the City's failure to issue the CEQA exemption certificate and the DPH approval before issuing the permit for the T-Mobile project is not grounds for invalidating the permit.

## C. Due Process Right to Notice and Hearing

Residents argue that the City violated their federal and state constitutional rights to due process because they were not given notice and an opportunity to be heard prior to the City's approval of the installation of the Randall Street equipment, which Residents allege diminished the value of their property.[8] As authority for this proposition, Residents rely on *Horn v. County of Ventura* (1979) 24 Cal.3d 605 [156 Cal.Rptr. 718, 596 P.2d 1134] (*Horn*), *Scott v. City of Indian Wells* (1972) 6 Cal.3d 541 [99 Cal.Rptr. 745, 492 P.2d 1137] (*Scott*), and *Drum v. Fresno County Dept. of Public Works* (1983) 144 Cal.App.3d 777 [192 Cal.Rptr. 782] (*Drum*).

In both *Horn, supra,* 24 Cal.3d 605, and *Scott, supra,* 6 Cal.3d 541, the plaintiffs owned property adjacent to vacant tracts of land on which residential subdivisions were to be developed. The plaintiff in *Horn* alleged that the planned development would cause significant increases in traffic congestion and air pollution, and interfere with his sole means of access to his property. (*Horn, supra,* 24 Cal.3d at p. 615.) In *Scott*, the planned development included "a seven-story apartment building, liquor store, rental office, and heliport in a location quite close to plaintiffs' property," situated in such a way as to directly block the plaintiffs' views. (*Scott, supra,* 6 Cal.3d at p. 545.) Given the substantial impact of the proposed developments on the plaintiffs' properties, the courts in both cases held that due process required notice and a hearing before the development projects could be approved by the local jurisdictions. (*Horn, supra,* 24 Cal.3d at pp. 615–616; *Scott, supra,* 6 Cal.3d at pp. 547–549.)

■ As Residents acknowledge, *Horn* itself "emphasize[d] . . . that constitutional notice and hearing requirements are triggered only by governmental action which results in 'significant' or 'substantial' deprivations of property, not by agency decisions having only a de minimis effect on land." (*Horn, supra,* 24 Cal.3d at p. 616.) ■ As a matter of law, affixing small equipment boxes to an existing utility pole in a developed urban area does not result in a " 'significant' or 'substantial' deprivation[] of property" so as to trigger constitutional due process rights.

---

[8] CEQA itself does not require that an agency give notice or hold a hearing before deciding a project is categorically exempt under CEQA. (*San Lorenzo, supra,* 139 Cal.App.4th at pp. 1385–1386.)

*Drum, supra,* 144 Cal.App.3d 777, was not a constitutional due process case; it involved an application for a variance, as to which notice and a hearing are *statutorily* required. (Gov. Code, § 65905, subd. (a).) In *Drum,* a homeowner gave notice to his neighbors that he planned to build a large garage on his property, and that he was seeking a variance from otherwise applicable side yard requirements in order to permit the construction. The homeowner did not, however, inform his neighbors that the planned garage would have an additional story above the garage, to be used as living quarters. The court concluded that building a two-story structure rather than a single-story one has a materially greater impact on neighboring properties, such that notice of the intent to build the smaller structure was not sufficient to provide the statutorily required notice with respect to the larger structure. The court therefore held that the variance was improperly obtained. (144 Cal.App.3d at pp. 781–783.) *Drum* is thus both factually and legally distinguishable from the present case. It does not support the proposition that notice and a hearing to neighboring landowners are constitutionally required before every planned alteration to a property, no matter how insignificant.

## DISPOSITION

The judgment is affirmed. T-Mobile and the City shall each recover their respective costs on appeal.

Reardon, J., and Sepulveda, J.,* concurred.

A petition for a rehearing was denied August 21, 2012, and on July 26, 2012, and August 21, 2012, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied November 14, 2012, S205640.

---

*Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.