Filed 2/5/18; pub. order 2/27/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| APTOS RESIDENTS ASSOCIATION, | H042854 |
| Plaintiff and Appellant, | (Santa Cruz County Super. Ct. No. CV179176) |
| v. | |
| COUNTY OF SANTA CRUZ, | |
| Defendant and Respondent; | |
| CROWN CASTLE, INC., | |
| Real Party in Interest and Respondent. | |

Appellant Aptos Residents Association (ARA) challenges the superior court's denial of its petition for a writ of mandate under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000, et seq.). ARA's petition challenged the approval by respondent County of Santa Cruz (the County) of a microcell transmitter project proposed by real party Crown Castle (Crown). Crown's project originally proposed to install 13 microcell transmitters as part of a Distributed Antenna System (DAS). These microcells would be placed on utility poles, primarily in the public right of way,[1] in the Day Valley area, a rural portion of unincorporated Aptos. The County

---

[1] Two of the microcells would be installed on private property.

concluded that Crown's DAS project was categorically exempt from CEQA and rejected ARA's claim that an exception to the exemption applied.

On appeal, ARA contends the County abused its discretion by (1) finding that the exemption applied because it failed to consider the entire project and instead improperly segmented the project by considering each microcell individually, (2) failing to consider information submitted by ARA that AT&T was interested in putting cell transmitters in the Day Valley area and finding that the "cumulative impact" exception did not apply, (3) finding that the "location" exception did not apply, and (4) finding that the "unusual circumstances" exception did not apply.  We reject ARA's contentions and affirm the judgment.

## I.  Background

Crown proposed to install a 13-microcell DAS system in the Day Valley area of Aptos for the purpose of providing wireless coverage for Verizon.  Each microcell would consist of a two-foot by one-foot antenna mounted on an extender pole, which would be attached to an existing utility pole in the County's right-of-way or on private property, along with "related pole-mounted equipment."  Crown submitted a separate permit application to the County's Zoning Administrator for each microcell.

Many residents of the Day Valley area signed a petition objecting to Crown's proposed project on the grounds that it would create "a health hazard" and "an aesthetic blight."  ARA, which organized the opposition to Crown's project, submitted a letter contending that Crown's project was not exempt from CEQA because it fell within the "cumulative impact" exception or the "unusual circumstance" exception.[2]

---

[2]     ARA made other contentions, but none of those contentions concerned the CEQA issues to which ARA's appeal is exclusively devoted.

Frank Barron, a planner for the County, prepared a staff report on the project for the Zoning Administrator. Barron characterized the microcells as "relatively visually inconspicuous" and determined that they fell within a categorical exemption from CEQA that applies to "small . . . structures." (Cal. Code of Regs., tit. 14, § 15303 [exemption for small structures].)[3] Barron also concluded that no exceptions to the exemption applied. (Guidelines, § 15300.2 [exceptions to exemptions].)

In October 2013, the Zoning Administrator considered Crown's applications for 11 permits. Although Crown had submitted separate permit applications for each microcell unit, the Zoning Administrator considered all 11 applications together. The Zoning Administrator rejected ARA's contentions and found that the project was exempt from CEQA.[4]

ARA appealed the Zoning Administrator's approvals to the County's Planning Commission on the same grounds that it had raised before the Zoning Administrator. ARA asserted that the County needed to consider the impact of Crown's project in conjunction with the impact of a PG&E project that proposed to replace some of the wood poles in the Day Valley area with 100-foot tubular steel poles.[5]

Barron prepared an extensive report for the Planning Commission addressing the nature of the project and ARA's contentions. Through site visits and photo-simulations,

---

[3] This chapter contains the CEQA Guidelines. Subsequent references to "Guidelines" will be to this chapter. "In interpreting CEQA, we accord the [CEQA] Guidelines great weight except where they are clearly unauthorized or erroneous." (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 428, fn. 5.)

[4] A condition of the Zoning Administrator's approval was that the height of the extensions on the utility poles (not including the two-foot tall antennas) not exceed six feet. The Zoning Administrator approved a twelfth permit in December 2013. It is not at issue in this appeal.

[5] In its reply brief, ARA asserts that the PG&E project "was eventually dropped by PG&E," which may explain why ARA has abandoned that argument on appeal.

he concluded that the "addition of the microcell antennas and equipment boxes to the poles" would not create "a visual impact, either individually or cumulatively" and "would not result in visual or other environmental impacts." Barron noted that the PG&E project had already undergone CEQA review and had been found to have no significant visual impact. Even taking the PG&E project into consideration along with Crown's project, he found "no cumulative impacts would occur." Barron also determined that Crown's DAS project was "the least visually intrusive means" of providing cell service in the area.

In February 2014, the Planning Commission considered Crown's remaining 10 permit applications together and found that they qualified for a categorical exemption both individually and as a group.[6] It found that the "visual impact" of the 10 microcells would be "negligible" "even when considered together and in conjunction with the PG&E" project and would not have "a significant cumulative visual impact." The Planning Commission approved the 10 permit applications, certified the categorical CEQA exemptions, and denied ARA's appeals.

ARA appealed the Planning Commission's decision to the County's Board of Supervisors (the Board). In March 2014, ARA sent a letter to the Board regarding "new information" that, according to ARA, demonstrated that AT&T "will likely be installing their own cell transmitters" in the same Day Valley area where Crown's project would be installed. ARA urged the Board to consider the possible AT&T project in conjunction with the Crown project as part of a cumulative impact analysis. The "new information" provided by ARA was its attorney's declaration in which he recounted a March 2014 telephone conversation he had had with Barron. ARA's attorney declared: "Barron stated that he had been contacted by AT&T and that they expressed their desire to install cell transmitters in the Day Valley Aptos area. He told me that they advised that they would likely wait to see whether Verizon's [*sic*] application for the DAS units in issue in

---

[6] Crown had withdrawn one of its permit applications.

4

this appeal were [*sic*] upheld before they installed their own version, or that they would wait to see if the County's proposed 'Broadband Initiative' was passed and then proceed."[7]

In April 2014, the Board considered whether to take jurisdiction over ARA's appeals of the 10 permits. The Board considered the 10 permits as a group. It had before it "multiple staff reports," "photo simulations," and letters from both ARA and Crown. ARA's attorney gave a 20-minute presentation to the Board. He argued: "They may be small structures, but when you have got 13 of them, they become significant aesthetically." "So you've got 13 of these proposed DAS units within an area that's less than one square mile." ARA's attorney argued that the 13 microcells had a cumulative impact and that the Board was required to consider the impact of "the likelihood that other companies will come in and do the same thing" because there was "a fair argument" that AT&T would install its own DAS in the future. He also asserted that the Board was required to consider the impact of the PG&E project, which was, in his view, going to turn the poles into "monstrosities." Crown told the Board that it was a "neutral host," and its DAS systems could often accommodate multiple carriers. It pointed out that its DAS at the University of California, Santa Cruz was currently accommodating five carriers. The Board voted to decline to take jurisdiction over ARA's appeals of the 10 permits.

In May 2014, ARA filed a petition in the superior court contending that the County had abused its discretion in failing to undertake an analysis of the environmental

---

[7] ARA's attorney's declaration also asserted his personal belief that "AT&T will likely . . . install their own version of a DAS system in Day Valley." He also declared that he had been told by unidentified AT&T "workers" that AT&T would "likely" be installing "fiber optic cable" to service AT&T's "wired" "U-Verse system."

5

impact of Crown's project.[8]  ARA claimed that the County's approval of the project violated CEQA because the County had improperly considered each microcell separately rather than as a group and had failed to consider the cumulative impact of other prospective projects, including the PG&E project and a possible AT&T project.  ARA contended that, because the Day Valley was zoned "residential agricultural," that made it a "mapped designation . . . for environmental protection," and "presumptively within CEQA . . . ."  ARA also argued that the project fell within the unusual circumstances exception because the Day Valley area is a particularly sensitive environment.  The superior court found that the County had not abused its discretion, and it denied ARA's petition.  In October 2015, ARA timely filed a notice of appeal from the court's denial of its petition.

## II.  Discussion

ARA contends on appeal that the County abused its discretion in finding that the project was categorically exempt from CEQA because (1) the County improperly segmented its review of the project, (2) the County improperly excluded evidence of future projects relevant to the "cumulative impact" exception analysis, (3) the County improperly failed "to review all the DAS units in the Day Valley Project" as part of the "cumulative impact" exception analysis, (4) the County failed to find that the project fell within the "location" exception for a "mapped protective designation," and (5) the County failed to find that the project came within the "unusual circumstances" exception.[9]

---

[8]      ARA's petition in the superior court also challenged the County's decision on the ground that the County had violated its own code.  On appeal, ARA raises only CEQA issues.

[9]      In its reply brief, ARA for the first time identifies as an appellate contention a claim that the County erroneously concluded that the project was exempt due to its

The County found that the project fell within the "Class 3" categorical exemption. A "Class 3" categorical exemption from CEQA applies to "construction and location of limited numbers of new, *small facilities or structures*; installation of small new equipment and facilities in small structures" including "electrical, gas, and *other utility extensions . . . .*" (Guidelines, § 15303, italics added.) When a project comes within a categorical exemption, no environmental review is required unless the project falls within an exception to the categorical exemption. Although categorical exemptions are construed narrowly, our review of an agency's decision that a project falls within a categorical exemption is deferential, and we determine only whether that decision is supported by substantial evidence. (*Save Our Carmel River v. Monterey Peninsula Water Management Dist.* (2006) 141 Cal.App.4th 677, 697.) Under CEQA, "substantial evidence includes fact, a reasonable assumption predicated upon fact, or expert opinion supported by fact" and "is not argument, speculation, unsubstantiated opinion or narrative, evidence that is clearly inaccurate or erroneous, or evidence of social or economic impacts that do not contribute to, or are not caused by, physical impacts on the environment." (Pub. Resources Code, § 21080, subd. (e).)

### A. Improper Segmenting

ARA contends that the County abused its discretion by "improperly" treating each of the microcells "as a separate 'project' under CEQA." ARA claims that the project was "a single large project and should not have been given exempt status as a 'small structure.'" Although these arguments appear under the heading "THE DAY VALLEY

---

"improper designation of the project." To the extent that this raises an issue different from ARA's opening brief claim that the County improperly segmented the project, it is forfeited due to ARA's failure to raise it in its opening brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764-765.)

7

PROJECT WAS IMPROPERLY SEGMENTED," it is not clear whether ARA is contending only that the County improperly segmented the project or also that the project did not qualify for a Class 3 exemption. Neither contention has any merit.

The Class 3 exemption applies to "limited numbers of new, small facilities or structures" including "electrical, gas, and other utility extensions." (Guidelines, § 15303.) Since the exemption repeatedly uses the plural and expressly refers to "limited numbers" of "small structures," it is clearly not limited to a single small structure. ARA does not attempt to argue that a microcell unit, as proposed, is not a small structure. Nor could it. Each of the microcell units consisted of a two-foot by one-foot antenna mounted on an extender pole that was no more than six feet in length along with pole-mounted equipment to support it. Not only that, but each microcell unit was a utility extension, which the Class 3 exemption explicitly includes. It is well recognized that the Class 3 exemption applies to "the installation of small new equipment on *numerous* existing small structures *in scattered locations*." (*Robinson v. City and County of San Francisco* (2012) 208 Cal.App.4th 950, 956, italics added (*Robinson*).) Here, the project proposed to install small microcell units on existing utility poles in scattered locations in the Day Valley. We conclude that substantial evidence supports the County's finding that the project comes within the Class 3 exemption.

ARA's "improper segmenting" claim also lacks merit. The County's planner, the Zoning Administrator, the Planning Commission, and the Board each considered the entire group of microcell units to be the project. None of them segmented the project into individual microcell units in considering whether the Class 3 exemption applied or whether one of the exceptions applied. ARA claims that the County improperly segmented the project because Crown filed *a separate permit application* for each microcell unit, and the County issued *a separate permit and exemption* for each microcell unit. The nature of the paperwork required for approval of the project is immaterial. At

8

all times, the County considered the project to encompass all 10 microcell units and considered them as a group. It did not improperly segment the project.

## B. Exceptions

ARA contends on appeal that three of the exceptions to the "Class 3" categorical exemption apply here. These exceptions are set forth in Guidelines section 15300.2. "(a) Location. Classes 3, 4, 5, 6, and 11 are qualified by consideration of where the project is to be located—a project that is ordinarily insignificant in its impact on the environment may in a particularly sensitive environment be significant. Therefore, these classes are considered to apply in all instances, except where the project may impact on an environmental resource of hazardous or critical concern where designated, precisely mapped, and officially adopted pursuant to law by federal, state, or local agencies. [¶] (b) Cumulative Impact. All exemptions for these classes are inapplicable when the cumulative impact of successive projects of the same type in the same place, over time is significant. [¶] (c) Significant Effect. A categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (Guidelines, § 15300.2.)

ARA bore the burden of showing that the project fell within an exception. "As to projects that meet the requirements of a categorical exemption, a party challenging the exemption has the burden of producing evidence supporting an exception." (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1105 (*Berkeley Hillside*).)

### 1. Standard of Review

The California Supreme Court decided in *Berkeley Hillside* that the standard of judicial review for the unusual circumstances exception is bifurcated. The standard of judicial review applicable to the cumulative impact and location exceptions is not as well

9

settled. (See *Hines v. California Coastal Com.* (2010) 186 Cal.App.4th 830, 855-856.) However, we conclude that a similar standard of judicial review applies to all three exceptions.

While we generally review the agency's determination for substantial evidence, the precise standard of judicial review turns on the nature of the underlying finding. "Whether a particular project presents circumstances that are *unusual* for projects in an exempt class is an essentially factual inquiry," which courts review under "the traditional substantial evidence standard that section 21168.5 incorporates." (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1114, italics added.) On the other hand, "when there are 'unusual circumstances,' it is appropriate for agencies to apply the fair argument standard in determining whether 'there is a reasonable possibility [of] a significant effect on the environment due to unusual circumstances,'" and "the reviewing court's function 'is to determine whether substantial evidence support[s] the agency's conclusion as to whether the prescribed "fair argument" could be made.'" (*Id.* at p. 1115.) Hence, where an exception is predicated on a factual issue, we apply a traditional substantial evidence standard of judicial review to that factual issue. Other issues are reviewed "'to determine whether substantial evidence support[s] the agency's conclusion as to whether the prescribed "fair argument" could be made.'" (*Ibid.*)

### 2. Cumulative Impact Exception

The cumulative impact exception applies where "the cumulative impact of successive projects of the same type in the same place, over time is significant." "'Cumulative impacts' refer to two or more individual effects which, when considered together, are considerable or which compound or increase other environmental impacts. [¶] (a) The individual effects may be changes resulting from a single project or a number of separate projects. [¶] (b) The cumulative impact from several projects is the change in the environment which results from the incremental impact of the project when added to other closely related past, present, and reasonably foreseeable probable future projects.

10

Cumulative impacts can result from individually minor but collectively significant projects taking place over a period of time."  (Guidelines, § 15355.)

ARA claims that, by refusing to take jurisdiction of ARA's appeal, the Board erroneously "excluded" "evidence" of "the AT&T Project" that ARA had submitted to the Board in support of its assertion that the project fell within the cumulative impact exception.  ARA contends that the information about AT&T's alleged plans that ARA provided to the Board was "significant new evidence" that obligated the Board, under a Santa Cruz County ordinance, to accept jurisdiction of ARA's appeal.

The Santa Cruz County ordinance upon which ARA relies provides:  "Supervisors will not take jurisdiction of an appeal and grant further review of a matter *unless the Board is convinced . . . that there is significant new evidence relevant to the decision* which could not have been presented at the time the decision appealed from was made." (Santa Cruz County Code, § 18.10.340(C), italics added.)

The "new information" provided by ARA was its attorney's declaration that Barron "had been contacted by AT&T and that they expressed their desire to install cell transmitters in the Day Valley Aptos area . . . [and] that they would likely wait to see whether Verizon's [*sic*] application for the DAS units in issue in this appeal were [*sic*] upheld before they installed their own version, or that they would wait to see if the County's proposed 'Broadband Initiative' was passed and then proceed."

The Board did not abuse its discretion in declining to take jurisdiction of ARA's appeal.  The Board reasonably concluded that information about the possibility that another cell provider would seek to install transmitters in the Day Valley area was not "significant new evidence" that was "relevant" to the determination of whether the cumulative impact exception applied.  First, the information was double hearsay, which substantially limited its relevance and significance.  Second, the information was too vague to support a factual finding that a possible AT&T project would be of "the same type in the same place."  The information provided by ARA to the Board did not

11

unambiguously indicate that AT&T intended to install *a DAS* rather than some other type of cell transmitter system.[10] Nor did it indicate precisely where in the Day Valley any AT&T cell transmitters might be installed. Without such information, a determination that the impact of a possible AT&T project would fall within the cumulative impact exception was pure speculation.

Third, the mere possibility that AT&T might decide to install additional microcell units in the Day Valley area was not "*significant* new evidence." (Italics added.) "[S]peculation that potential future projects similar to the one under consideration *could* cause a cumulative adverse impact is not sufficient to negate a categorical exemption." (*Robinson*, *supra*, 208 Cal.App.4th at pp. 959-960.) ARA did not present any *evidence* that a future AT&T project had actually been proposed or of the parameters of any such project. Fourth, ARA's speculative information was not materially "new." Of course it was possible that another cell carrier or neutral host would decide to seek permission to install additional microcell units in the Day Valley area, but ARA did not produce evidence that AT&T or any one else actually was seeking to do so. As one member of the Board stated at the hearing, he was "not persuaded that it reaches that level of new evidence . . . ."

Under these circumstances, the Board's failure to take jurisdiction over ARA's appeal did not violate the County ordinance upon which ARA relies. Nor is there any merit to ARA's claim that the Board refused to consider the AT&T information that ARA provided. ARA presented this information to the Board, its attorney made a lengthy argument based on this information, and the Board's discussion of ARA's appeal

---

[10] ARA also relies on a declaration from an engineer. This declaration was entirely speculative as the engineer had no personal knowledge of any relevant facts and merely relied on what he had been told by others and his own speculation.

12

demonstrated that it had considered this information. We find no abuse of discretion in the Board's treatment of ARA's information regarding AT&T.

ARA contends that the County abused its discretion in finding that the cumulative impact exception did not apply because the County failed to consider the cumulative impact of all 10 microcell units included in the project. We have already rejected that contention in connection with ARA's improper segmenting contention. The County, at every stage, considered all 10 microcell units as a single project and concluded that they would neither individually nor collectively have a significant aesthetic impact.

ARA argues that the County's cumulative impact exception analysis was inadequate because it failed to consider a possible AT&T project.[11] ARA did not produce any evidence regarding AT&T prior to the Planning Commission's decision. It was only when ARA appealed to the Board that it provided the AT&T information that the Board found was not significant, relevant, new evidence. The Board did consider this information and decided that it did not merit the Board taking jurisdiction over the appeal.

ARA claims that the AT&T information showed that the cumulative impact exception applies because "AT&T has stated their [*sic*] intent to install DAS units in the same area, and likely the same utility poles . . . ." This claim is not accurate. The AT&T information provided by ARA amounted to mere "speculation that potential future projects similar to the one under consideration *could* cause a cumulative adverse impact," which is "not sufficient to negate a categorical exemption." (*Robinson*, *supra*, 208 Cal.App.4th at pp. 959-960.) ARA's information about AT&T's possible intent was insufficient to support even a fair argument that AT&T would be pursuing a project of

_____

[11]     ARA no longer contends that the County abused its discretion in failing to find that the environmental impact of the proposed PG&E project brought this project within the cumulative impact exception.

13

the " 'same type' " at the " 'same place . . . .' " (*Id.* at p. 958, italics omitted.) That was simply ARA's speculation. ARA's information about AT&T demonstrated only that AT&T hoped to provide cell coverage in the Day Valley area by some means, not that it would be a DAS or that it would be installed on the same utility poles where Crown's microcells would be installed.[12]

In fact, the evidence before the Board reflected that such a scenario was unlikely. Crown was a neutral host with whom AT&T could contract to obtain cell coverage in the Day Valley area using the DAS that this project sought permission to install. Furthermore, the Joint Pole Association controlled access to the utility poles, and access was available only if all of those using the pole agreed and the pole would not be overloaded by additional equipment. Under these circumstances, the possibility that another DAS project would be installed in the same places as this one was remote.

In sum, the County did not abuse its discretion in concluding that ARA's belated submission of the ambiguous and unreliable AT&T information did not satisfy ARA's burden to produce evidence that there was a fair argument that the cumulative impact exception applied.

### 3. Location Exception

ARA's primary argument on appeal is that the County abused its discretion in failing to find that the location exception, which ARA never mentioned below, applied here.

The location exception is restricted to projects that "may impact on *an environmental resource **of hazardous or critical concern** where **designated**, precisely*

---

[12] ARA attempts to draw inferences about AT&T's intent from information that AT&T might be installing fiber optic cable in the Day Valley area. Since this information showed that fiber optic cable served an unrelated purpose for AT&T, these inferences were entirely speculative.

*mapped, and officially adopted* pursuant to law by federal, state, or local agencies."
(Guidelines, § 15300.2(a), italics & boldface added.)

ARA presented no *evidence* below that either the Day Valley area in general or any of the specific utility poles where the microcell units would be installed are at a "location" that is a "designated, precisely mapped" "environmental resource *of hazardous or critical concern . . . .*" (Italics added.) On appeal, ARA attempts to support its location exception argument with references to the Santa Cruz County Code that support the proposition that the Day Valley area is a "rural" area that is zoned "Residential Agricultural."

While we accept that the Day Valley area is rural and zoned Residential Agricultural, these facts do not show that the Day Valley area has been "designated" as an "environmental resource of hazardous or critical concern . . . ." ARA seems to believe that the County's zoning ordinance describing the purpose of the Residential Agricultural zoning district fills the evidentiary void. "RA Residential Agricultural District Purposes. To provide areas of residential use where development is limited to a range of non-urban densities of single-family dwellings in areas outside the urban services line and rural services line; on lands suitable for development with adequate water, septic system suitability, vehicular access, and fire protection; with adequate protection of natural resources; with adequate protection from natural hazards; and where small-scale commercial agriculture, such as animal-keeping, truck farming and specialty crops, can take place in conjunction with the primary use of the property as residential." (Santa Cruz County Code, § 13.10.321(B).)

Nowhere in this statement of purpose of the Residential Agricultural zoning district has the County "designated" the Day Valley area as "an environmental resource of hazardous or critical concern . . . ." The lack of such a designation is fatal to ARA's claim that the project falls within the location exception.

15

ARA also claims that the County abused its discretion because it failed to consider whether the microcell units would be placed in the "least visually obtrusive location." A Santa Cruz County ordinance encourages "co-location" of wireless communications facilities (WCFs) "if it does not create significant visual impacts." (Santa Cruz County Code, § 13.10.661(G).) "Co-located" WCFs on utility poles, like Crown's project, are permitted so long as they do "not significantly increase the visual impact of the existing facility/tower/pole." (Santa Cruz County Code, § 13.10.661(C)(3).) The ordinance also provides: "Site Selection—Visual Impacts. Wireless communication facilities shall be sited in the least visually obtrusive location that is technically feasible, unless such site selection leads to other resource impacts that make such a site the more environmentally damaging location overall." (Santa Cruz County Code, § 13.10.661(F).)

Our reading of this ordinance is that it creates three different standards that may apply depending on the location of the WCF. Co-located WCFs in general are encouraged and permitted if they do not "create significant visual impacts." Co-located WCFs on utility poles are permitted if they do not "significantly increase the visual impact" of the utility poles. WCFs that are *not* co-located must be "sited in the least visually obtrusive location that is technically feasible." This third standard does not apply to a co-located WCF. Any other reading of this ordinance would be unreasonable since it would create three different standards that a single WCF would have to satisfy.

In any case, Barron's staff report explicitly considered the visual impact of the project and concluded that it would not significantly increase the visual impact of the utility poles. A microcell that does not significantly increase the visual impact of a utility pole cannot be considered to be at all "visually obtrusive . . . ." Since the visual impact of the utility poles would not be significantly increased by the project, any visual impact of the project was necessarily insignificant and could not require further environmental review under CEQA.

16

## 4. Unusual Circumstances Exception

ARA contends that the County abused its discretion in failing to find that the unusual circumstances exception applied to the project. "Whether a particular project presents circumstances that are unusual for projects in an exempt class is an essentially factual inquiry," which we review under "the traditional substantial evidence standard that section 21168.5 incorporates." (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1114.)

Here, ARA failed to produce evidence that the circumstances of this project were unusual for Class 3 exempt projects. "A party invoking the exception may establish an unusual circumstance without evidence of an environmental effect, by showing that the project has some feature that distinguishes it from others in the exempt class, such as its size or location." (*Berkeley Hillside*, *supra*, 60 Cal.4th at p. 1105.) The Class 3 exemption applies to small structures, including "utility extensions." While rural areas may not need *as many* utility extensions as urban areas, ARA produced no evidence that it is unusual for small structures to be used to provide utility extensions in a rural area. Nor did ARA show that it was unusual for small structures to be used to provide utility extensions in an area that is zoned Residential Agricultural. Areas that are used for residential and agricultural purposes clearly need utilities, including cell coverage. It is not unusual that such services are provided by small structures. Indeed, the aesthetic impact and environmental consequences are reduced by the use of small structures rather than large structures to provide such utilities.

"[F]or the [unusual circumstances] exception to apply, it is not alone enough that there is a reasonable possibility the project will have a significant environmental effect; instead, in the words of the Guidelines, there must be 'a reasonable possibility that the activity will have a significant effect on the environment *due to unusual circumstances.*'" (*Berkeley Hillside*, *supra*, 60 Cal.4th at pp. 1097-1098.) Since ARA did not meet its burden of showing unusual circumstances, substantial evidence supports the County's determination that the unusual circumstances exception did not apply.

### III.  Disposition

The judgment is affirmed.

_____
Mihara, J.

WE CONCUR:


_____
Elia, Acting P. J.



_____
Bamattre-Manoukian, J.




Aptos Residents Association v. County of Santa Cruz
H042854

19

Filed 2/27/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| APTOS RESIDENTS ASSOCIATION, | H042854 |
| | (Santa Cruz County |
| Plaintiff and Appellant, | Super. Ct. No. CV179176) |
| v. | |
| | ORDER GRANTING REQUESTS |
| COUNTY OF SANTA CRUZ, | FOR PUBLICATION |
| Defendant and Respondent; | |
| CROWN CASTLE, INC., | |
| Real Party in Interest and Respondent. | |

BY THE COURT:

Pursuant to California Rules of Court, rule 8.1105(b), the requests for publication are hereby granted. It is ordered that the opinion in this matter, filed on February 5, 2018, shall be certified for publication.

Date: _____

_____
Mihara, J.


_____
Elia, Acting P. J.


_____
Bamattre-Manoukian, J.

Trial Court:                                        Santa Cruz County Superior Court


Trial Judge:                                        Honorable Marjorie Laird Carter


Attorney for Plaintiff and Appellant:               David Y. Imai
                                                    Law Offices of David Y. Imai


Attorneys for Defendant and Respondent
County of Santa Cruz:                               Dana McRae
                                                    County Counsel, County of Santa Cruz

                                                    T. Brooke Miller
                                                    Assistant County Counsel



Attorneys for Real Party in Interest
and Respondent Crown Castle Inc.:                   Michael W. Shonafelt
                                                    Eric J. Rollins
                                                    Newmeyer & Dillion LLP

Aptos Residents Association v. County of Santa Cruz
H042854