Filed 11/18/22; certified for publication 12/5/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAINT IGNATIUS NEIGHBORHOOD ASSOCIATION, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent. | A164629 (City & County of San Francisco Super. Ct. No. CPF-20-517320) |

Plaintiff Saint Ignatius Neighborhood Association (the neighborhood association) appeals a judgment denying its petition for writ of mandate challenging the approval by the City and County of San Francisco (the city) of an application submitted by Saint Ignatius College Preparatory High School (the school) seeking authorization to install four 90-foot light standards in the school's athletic stadium. The neighborhood association contends the city erred by finding that the proposed lighting project was exempt from review under the California Environmental Quality Act (CEQA) (Pub. Resources Code,[1] § 21000 et seq.). We agree and shall reverse the judgment.

---

[1]     All statutory references are to the Public Resources Code unless otherwise noted.

1

## Background

The school is located at 2001 37th Avenue in the city's "Outer Sunset District." The school's athletic stadium is located at the southwest corner of the campus, with frontage on 39th Avenue and Rivera Street. The stadium has a seating capacity of 2,008 persons. Surrounding the stadium, including west across 39th Avenue and south across Rivera Street, are two-story, mostly single-family homes.

In February 2018, the school submitted an application for approval of the addition of four permanent 90-foot tall outdoor light standards to its athletic field to enable nighttime use of the stadium.[2]

In June 2020, the city's planning department determined that the project is categorically exempt from review under CEQA. In July, the planning commission approved a conditional use authorization for the project with several conditions on use of the lights. The planning commission required, among other things, that the lights be used no more than 150 nights per year, generally dimmed no later than 8:30 p.m. and turned off no later than 9:00 p.m., used for larger events until 10:00 p.m. no more than 20 evenings per year, and not be used by groups unaffiliated with the school. The planning commission also required close communication with neighbors about events on the field, and required distribution of a large-event management plan and a code of conduct for students and others attending events.

The board of supervisors affirmed the planning department's determination that the project is categorically exempt from CEQA review and approved the conditional-use authorization after imposing additional-use

---

[2]    The project also includes installation of telecommunications equipment that is not at issue in the present appeal.

2

conditions. The board of supervisors further (1) restricted the hours that the field lights could be used, requiring that they be dimmed no later than 8:00 p.m. and turned off no later than 8:30 p.m. except that on 15 nights a year lights could remain on until 10:00 p.m.; (2) required the school to report the dates and times the lights are turned on, dimmed, and turned off; (3) required that for events with anticipated crowds of more than 500 people, the school provide off-site parking to accommodate at least 200 vehicles; and (4) required that trees be installed to better screen the field and lights from neighboring homes.

Thereafter, the neighborhood association filed a petition for writ of mandate alleging that the city erred in exempting the project from CEQA review and that the city's approval of the conditional use authorization was inconsistent with the city's planning code and its general plan.

The trial court denied the petition and the neighborhood association timely filed a notice of appeal.

## Discussion

"CEQA and its implementing regulations 'embody California's strong public policy of protecting the environment.' " (*Bottini v. City of San Diego* (2018) 27 Cal.App.5th 281, 291.) "CEQA establishes a three-tier environmental review process. The first step is jurisdictional and requires a public agency to determine whether a proposed activity is a 'project.' . . . If a proposed activity is a project, the agency proceeds to the second step of the CEQA process. [¶] At the second step, the agency must 'decide whether the project is exempt from the CEQA review process under either a statutory exemption [citation] or a categorical exemption set forth in the CEQA

3

Guidelines.' "[3] (*Ibid.*) "The Guidelines contain 33 classes of categorical exemptions. (Guidelines, §§ 15301-15333.) Each class embodies a 'finding by the Resources Agency that the project will not have a significant environmental impact.' " (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1381; § 21083, subd. (b).) Categorical exemptions are subject to exceptions. (See Guidelines, § 15300.2.) Among other things, a "categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (*Id.*, subd. (c).) "If a project is categorically exempt and does not fall within an exception, ' "it is not subject to CEQA requirements and 'may be implemented without any CEQA compliance whatsoever.' " ' " (*Bottini v. City of San Diego, supra,* 27 Cal.App.5th at pp. 291–292.) "[I]f a project is not exempt, the agency must then 'decide whether the project may have a significant environmental effect.' " (*Id.* at p. 292.) Where the agency determines the project will not have a significant environmental effect, the agency " 'must "adopt a negative declaration to that effect." ' " (*California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382.) "[I]f the agency finds the project 'may have a significant effect on the environment,' it must prepare an [environmental impact report] before approving the project." (*Ibid.*)

Here, the city found that the lighting project is exempt from CEQA review under the class 1 and class 3 categorical exemptions and that none of

---

[3] The CEQA "Guidelines" are promulgated by the Secretary of the Resources Agency pursuant to section 21083 are contained at California Code of Regulations, title 14, section 15000 et seq. (hereinafter, Guidelines).

the exceptions to the exemptions apply. The city's determination that the project is exempt from compliance with CEQA requirements is subject to judicial review under the abuse of discretion standard found in section 21168.5. (*Save Our Carmel River v. Monterey Peninsula Water Management Dist.* (2006) 141 Cal.App.4th 677, 693.) "Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." (§ 21168.5.) Interpretation of the language of the Guidelines and the scope of a categorial exemption is a legal question subject to our de novo review, while the city's determination that the project fits within an exemption is subject to review for substantial evidence. (*Save our Carmel River*, *supra*, at pp. 693–694.)

### *Class 1 Exemption*

The class 1 exemption for "existing facilities" applies to "the operation, repair, maintenance, permitting, leasing, licensing, or minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of the existing or former use." (Guidelines, § 15301.) The Guideline provides a non-exhaustive list of examples of the types of projects that qualify for a class 1 exemption including, among others, "[i]nterior or exterior alterations involving such things as interior partitions, plumbing, and electrical conveyances" and "[a]dditions to existing structures provided that the addition will not result in an increase of more than . . . 50 percent of the floor area of the structures before the addition, or 2,500 square feet, whichever is less." (*Id.*, subds. (a) & (e).) Guideline section 15301 states, however, that the list is "not intended to be all-inclusive of the types of projects which might fall within Class 1. The

5

key consideration is whether the project involves negligible or no expansion of use."

The city determined that the project qualifies for a class 1 exemption because it involves negligible or no expansion of the existing use of the facility. The planning department explained, "The proposed project does not entail the construction of a new stadium or the expansion of the existing playing surface. The project would not expand the existing bleachers or increase the stadium's capacity. The proposed lights would primarily shift the school's existing use of the field to later times in the day and/or days of the week. The school would not be adding new athletic teams and would not rent the facility to non-affiliated teams during the evening hours. . . . For approximately 40-50 evenings a year, the school uses temporary (portable) field lights at the existing stadium. The proposed installation of permanent lights would support evening use at the stadium for up to 150 evenings a year. . . . [T]he project would shift the timing of the field use, from early mornings on weekdays to early evenings on weekdays, and would move approximately 5 Saturday afternoon football games to Friday evenings. With implementation of the project, evening games and practices are not intended to intensify use of the stadium and the school does not anticipate an overall increase in attendance at these events."

Substantial evidence supports the city's findings that the project will not result in an increase in the capacity of the stadium or the overall frequency of its use. Nonetheless, it is undisputed that the project will significantly expand the nighttime use of the stadium. Without the project, the field is quiet and dark most evenings during the fall and winter months. With the project, the field will be lit and in use approximately 80 percent of the fall and winter weeknights. The school suggests that the existing

6

nighttime use of the field is 40 to 50 evenings during the fall and winter with the use of temporary lights. The neighborhood association suggests that there should be no use because use of the temporary lights is not authorized. Either way, increasing the use of the field to 150 nights a year is a significant expansion of the facility's existing use. (*Save Our Carmel River v. Monterey Peninsula Water Management Dist.*, *supra*, 141 Cal.App.4th at p. 697 [a categorical exemption should be interpreted "to afford the fullest possible protection to the environment within the reasonable scope of the statutory language"]; *County of Amador v. El Dorado County Water Agency* (1999) 76 Cal.App.4th 931, 966 ["exemptions are construed narrowly and will not be unreasonably expanded beyond their terms"].) As such, the city erred in finding the class 1 categorical exemption applicable.

### *Class 3 Exemption*

The class 3 exemption, entitled "New Construction or Conversion of Small Structures" applies to "construction and location of limited numbers of new, small facilities or structures; installation of small new equipment and facilities in small structures; and the conversion of existing small structures from one use to another where only minor modifications are made in the exterior of the structure." (Guidelines, § 15303.) "Examples of this exemption include but are not limited to: [¶] (a) One single-family residence, or a second dwelling unit in a residential zone. In urbanized areas, up to three single-family residences may be constructed or converted under this exemption. [¶] (b) A duplex or similar multi-family residential structure totaling no more than four dwelling units. In urbanized areas, this exemption applies to apartments, duplexes, and similar structures designed for not more than six dwelling units. [¶] (c) A store, motel, office, restaurant or similar structure not involving the use of significant amounts of hazardous substances, and not

7

exceeding 2500 square feet in floor area. In urbanized areas, the exemption also applies to up to four such commercial buildings not exceeding 10,000 square feet in floor area on sites zoned for such use if not involving the use of significant amounts of hazardous substances where all necessary public services and facilities are available and the surrounding area is not environmentally sensitive. [¶] (d) Water main, sewage, electrical, gas, and other utility extensions, including street improvements, of reasonable length to serve such construction. [¶] (e) Accessory (appurtenant) structures including garages, carports, patios, swimming pools, and fences. . . ." (*Ibid.*)

In *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1097–1098 (*Berkeley Hillside*) our Supreme Court explained, "[i]n listing a class of projects as exempt, the [Secretary of the Resources Agency] has determined that the environmental changes typically associated with projects in that class are not significant effects within the meaning of CEQA, even though an argument might be made that they are potentially significant." As noted above, "[b]ecause the exemptions operate as exceptions to CEQA, they are narrowly construed. [Citation.] 'Exemption categories are not to be expanded beyond the reasonable scope of their statutory language.' " (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.*, *supra*, 139 Cal.App.4th at p. 1382.)

The city contends installation of the four light standards falls within section 15303, as it applies to "limited numbers of new, small . . . structures." In determining what constitutes a "small" structure within the scope of the exemption, we look to the examples provided by the state Resources Agency. Although not an exclusive list, the examples do provide an indication of the type of projects to which the exemption applies. The light standards are fundamentally dissimilar from all of the examples. While reference to square

8

footage is meaningful when referring to commercial and residential buildings, as the guideline does, whether a structure is "small" when referring to detached light-emitting standards cannot be evaluated solely on the basis of the square footage at their base. The residential and commercial structures listed in the guideline are subject to applicable zoning requirements, which ensure their height will be generally consistent with the surrounding neighborhood. (See Guidelines, § 15303, subdivision (a) ["One single-family residence, or a second dwelling unit in a residential zone."]; *id.*, subd. (c) ["In urbanized areas, the exemption also applies to up to four such commercial buildings not exceeding 10,000 square feet in floor area on sites zoned for such use . . . ."].) While the state Resources Agency has determined that any potential impacts associated with "small" new residential or commercial structures are ordinarily not significant, this determination does not reasonably apply to the light standards at issue here. The light standards, at 90 feet tall, are significantly taller than any other structure in the neighborhood. In comparison, homes in the area are typically 20 to 25 feet tall, the city's zoning ordinance limits residential buildings in the area to 40 feet tall and typical streetlights are only 25 to 30 feet tall. (See S.F. Planning Code, §§ 105, 106; Zoning Map HT05; S.F. Pub. Util. Com., Streetlight Guidelines (July 1, 2021) p. 4.) In short, a 90-foot tall light standard does not qualify as "small" within the meaning of the exemption.

*Don't Cell Our Parks v. City of San Diego* (2018) 21 Cal.App.5th 338, 359, relied upon by the city, is distinguishable. In that case, the court recognized that "[t]here is a paucity of case law applying this exemption." Nonetheless, the court held that the project, which consisted of the construction of a cell tower disguised as a 35-foot-high faux eucalyptus tree and a 250-square-foot landscaped equipment structure, fell within the scope

9

of the class 3 categorical exemption. (*Id.* at pp. 346, 360.) The court noted that the square footage of the proposed project was "much smaller than a single-family residence, store, motel, office or restaurant." (*Id.* at p. 360.) However, the proposed cell tower was "installed in an existing stand of tall trees, two of which [were] about 55 feet high." (*Id.* at p. 346.) The cell tower was small within its setting, unlike the light standards at issue here which will be by far the tallest structure in the surrounding area. They are not small within the environment but instead tower over it.

The city also cites several cases in which courts have upheld application of the class 3 exemption to a wide variety of new telecommunication projects. (See *Aptos Residents Assn. v. County of Santa Cruz* (2018) 20 Cal.App.5th 1039 [10 microcell transmitter units on existing utility poles]; *Robinson v. City and County of San Francisco* (2012) 208 Cal.App.4th 950 [40 wireless equipment cabinets on existing utility poles]; *San Francisco Beautiful v. City and County of San Francisco* (2014) 226 Cal.App.4th 1012 [726 new utility cabinets on public sidewalks].) The installation of new 90-foot light standards, however, can hardly be considered similar to the installation of utility boxes on existing utility poles.

Accordingly, the light standards cannot fairly be considered small structures within the meaning of the class 3 exemption.

### *Conclusion*

We therefore conclude that neither exemption from CEQA review relied on by the city applies. In view of this conclusion, it is unnecessary to consider the neighborhood association's alternative argument that unusual circumstances preclude application of the exemptions. (Guidelines, § 15300.2, subd. (c) [A categorical exemption does not apply "where there is a reasonable possibility that the activity will have a significant effect on the environment

due to unusual circumstances."].) Nor do we reach the neighborhood association's additional argument that the city's approval of a conditional-use authorization for the project was inconsistent with the city's planning code and its general plan.

Finally, counsel's observation at oral argument is worth noting. The purpose here for enforcing the environmental analysis required by CEQA is not necessarily to kill the project but to require careful consideration of measures that will mitigate the environmental impacts of the project. There is evidence that the proposed light standards may have light, noise and traffic impacts on the neighborhood. Although the city has imposed conditions designed to address these concerns, the neighborhood citizens are entitled to have the sufficiency of these conditions scrutinized in accordance with CEQA standards and, if deemed necessary, enforceable limitations imposed.

## Disposition

The judgment is reversed. The neighborhood association shall recover its costs on appeal.


POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

11

Filed 12/5/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAINT IGNATIUS NEIGHBORHOOD ASSOCIATION,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>　　　Defendant and Respondent. | A164629<br><br>(City & County of San Francisco Super. Ct. No. CPF-20-517320)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

　　　The opinion in the above-entitled matter filed on November 18, 2022, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

December 5, 2022　　　　　　　　　　POLLAK, P.J.

| | |
|---|---|
| Trial court: | San Francisco County Superior Court |
| Trial judge: | Honorable Rochelle C. East |
| Counsel for plaintiff and appellant: | Michael W. Graf |
| Counsel for defendant and respondent: | David Chiu, City Attorney<br>Brian F. Crossman and Christopher T. Tom, Deputy City Attorneys |

Filed 12/5/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAINT IGNATIUS NEIGHBORHOOD ASSOCIATION, <br>     Plaintiff and Appellant, <br> v. <br> CITY AND COUNTY OF SAN FRANCISCO, <br>     Defendant and Respondent; <br> IGNATIAN CORPORATION et al., <br>     Real Parties in Interest and Respondents. | A164629 <br><br> (City & County of San Francisco Super. Ct. No. CPF-20-517320) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on November 18, 2022, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

December 5, 2022                   POLLAK, P.J.

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court |
| Trial Judge: | Honorable Rochelle C. East |
| Counsel for Plaintiff and Appellant Saint Ignatius Neighborhood Association: | Michael W. Graf |
| Counsel for Defendant and Respondent City and County of San Francisco: | David Chiu, City Attorney<br>Brian F. Crossman and Christopher T. Tom, Deputy City Attorneys |
| Counsel for Real Party in Interest Ignatian Corporation: | MOSCONE EMBLIDGE & RUBENS LLP<br>G. Scott Emblidge |
| Counsel for Real Party in Interest Verizon Wireless Services: | MACKENZIE & ALBRITTON LLP<br>Melanie Sengupta |
| Counsel for Real Party in Interest GTE Mobilnet California Limited Partnership: | MACKENZIE & ALBRITTON LLP<br>Mark L. Mosley and Melanie Sengupta |